R. R. DONNELLEY & SONS CO., D. B. A. THE LAKESIDE PRESS,
APPELLANT, *v.* PORTERFIELD, TAX COMMR., APPELLEE.

[Cite as R. R. Donnelley & Sons Co. v. Porterfield
(1972), 30 Ohio St. 2d 219.]

(No. 71-673—Decided June 7, 1972.)

*Messrs. Mayer, Tingley, Hurd & Emens, Mr. Shelby V. Hutchins* and *Mr. David M. Kauffman,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Peter A. Stratigos,* for appellee.

LEACH, J. The issue in this case is whether materials and equipment purchased and used by appellant in its composing room or in its offset plate making operations are excepted from the Ohio sales and use taxes.

Only the question of sales tax need be discussed herein, in view of R. C. 5741.02(C) (2), which provides that the use tax does not apply to the acquisition of tangible personal property which, if made in Ohio, would be a sale not subject to the sales tax imposed by R. C. 5739.01 to 5739.31.

In order to bring the issues involved herein into proper focus, it should be pointed out that appellant is not asserting that its purchases for use in the composing room and in the offset plate making operations were exempt under the "use on use" provisions of R. C. 5739.02 (B) (17) as in force and effect from January 2, 1962, until September 1, 1967. See *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, at page 174. The application of R. C. 5739.02(B)(17) was not raised before the Board of Tax Appeals, and thus need not be considered here. *Wesleyan University Press, Inc.*, v. *Donahue, Tax Commr.* (1966), 8 Ohio St. 2d 4, 5. Moreover, such issue was not raised in this court and, in response to questions propounded to counsel for appellant during oral argument, we were informed that a "policy decision" had been made not to raise such issue.

It should also be pointed out that appellant is not asserting that its purchases were excepted from the definition of "sale" by that portion of R. C. 5739.01(E) (2) which excepts sales in which the purpose of the consumer is to use or consume the thing transferred "directly in making retail sales." It was upon this basis that this court held in *City Blue Printing Co.* v. *Bowers* (1955), 163 Ohio St. 6 that:

"One engaged in the business of producing by photostating, blueprinting, Ozaliding and other similar processes copies of documents, drawings, photographs, prints, etc., the price thereof charged to the customer being largely dependent on the quantity of copies ordered and the

type of processing used in their production, is a vendor, and the purchases of the materials he consumes and uses in his business are not subject to sales and use taxes under Sections 5546-2 and 5546-26, General Code (Sections 5739.-02 and 5741.02, Revised Code)."

Thus, *City Blue Printing* does not stand for the proposition that *all* purchases made by a printing company are excepted or exempted from the sales tax. As noted at page 9 in the opinion, the question there under consideration was "whether, in the operation of its business, appellant was merely perfoming a 'service' for its customers and must therefore pay the sales and use taxes as to the items utilized by it in rendering such services, or whether, in producing and delivering copies to its customers of materials submitted by them, it was making a 'sale,' thus obligating the purchasers to pay the tax."

Subsequent to our decision in *City Blue Printing,* all doubts as to whether such transactions should be considered as the performance of a "service," or as the making of a "sale," were resolved by the expansion of the definition of sale in R. C. 5739.01(B) to "include all transactions by which printed, imprinted overprinted, lithographic, mutilithic, blue printed, photostatic, or other productions or reproductions of written or graphic matter are or are to be furnished or transferred." 128 Ohio Laws 423, effective July 29, 1959. While the 1959 amendment of R. C. 5739.01(B) enlarged the scope of the transactions by which the customers of a printer are subjected to sales tax, no amendment was made enlarging the scope of R. C. 5739.01(E) (2) as to exceptions from taxation of tangible personal property purchased by the printer.

Appellant asserts, in effect, that under the provisions of R. C. 5739.01(E) (2) all of the materials and equipment used by it in its composing room and offset plate making operations are excepted from taxation as being "used directly in manufacturing or processing." Such assertion misreads the requirements of R. C. 5739.01 (E) (2) as to use in manufacturing or processing.

The original Ohio Retail Sales Tax Act enacted in

1934 defined the subjects of taxation as: ''* * * all sales excepting those in which the purpose of the consumer is * * * (b) * * * to use or consume the thing transferred in manufacturing * * *.''

While the addition of the word ''directly'' in the 1935 amendment is well known, the importance of the addition of other language is sometimes overlooked. The 1935 amendment did not except from the sales tax all sales where the purpose of the consumer was ''to use or consume the thing transferred directly in manufacturing * * * [or] processing.'' Instead, the exception from taxation was limited to sales where the purpose of the consumer was ''to use or consume the thing transferred *directly* in the *production* of *tangible personal property for sale* by manufacturing [or] processing.'' (Emphasis added.)

The importance of the words ''the production of tangible personal property for sale'' in the manufacturing and processing exception becomes apparent when comparison is made with the exception for public utility service. R. C. 5739.01(E)(2) also excepts from taxation those sales in which the purpose of the consumer is to use or consume the thing transferred ''directly in the rendition of a public-utility service.'' The statute excepts from taxation all sales of tangible personal property acquired by a public utility as a consumer where such property is used or consumed by the public utility directly in the *rendition* of its public utility *service*. The manufacturing or processing exception, by way of contrast, is limited to that part of the business of manufacturing or processing which involves the direct use or consumption of the tangible personal property in the *production* of tangible personal *property* for sale.

That distinction was recognized and applied by this court in *Athens Home Telephone Co. v. Peck* (1953), 158 Ohio St. 557. We quote from the opinion of Weygandt, C. J., at page 560:

''The instant cases do not involve the *production* of *property*. Instead it is the *rendition* of *service*.

"Is this difference in the General Assembly's language important? This court is of the opinion that the contrast is significant and may not be disregarded. It seems unnecessary to labor the point that 'production of property' and 'rendition of service' are not synonymous terms.

"But it is urged that in 1935 the word 'directly' was inserted in both provisions by amendment and must be considered. This, of course, is true. However, it does not follow that the common use of this one word renders the remainder of the two terms synonymous."

See, also, *Erie Rd. Co.* v. *Peck* (1953), 160 Ohio St. 322; *Warren Telephone Co.* v. *Bowers* (1962), 173 Ohio St. 164; and *Ohio Edison Co.* v. *Porterfield* (1971), 28 Ohio St. 2d 150.

As to manufacturing and processing, it is clear that the test is not the *rendition* of a *service* but instead is the actual *production* of tangible personal *property* for sale.

The syllabus of *Youngstown Building Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, reads as follows:

"In determining whether tangible personal property is used or consumed directly in the production of tangible personal property for sale by manufacturing or processing, and, therefore, whether its sale or use is excepted from taxation under the provisions of subdivision (E)(2) of Section 5739.01, or subdivision (C)(2) of Section 5741.01, Revised Code, the test is not whether such property is essential to the operation of an 'integrated plant,' the test to be applied being, *when* does the actual manufacturing or processing activity begin and end, and is the property used or consumed *during and in the manufacturing or processing period.*"

The many other cases of this court so interpreting the manufacturing or processing exceptions have been extensively reviewed by Justice Herbert recently in *Canton Malleable Iron Co.* v. *Porterfield, supra* (30 Ohio St. 2d 163), and thus need not be repeated here. Essentially, *Canton Malleable* constitutes a reiteration of the principles announced in *Youngstown Building Material & Fuel Co.*

226

In paragraph four of the syllabus of *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407, this court held that the manufacturing and processing exceptions in the sales and use tax "imply essentially a transformation or conversion of materials or things into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products."

That this pronouncement in *National Tube* is still viable is demonstrated by *Canton Malleable.*

Applying the principles of both *National Tube* and *Youngstown Building Material & Fuel Co.* to the instant case, we must reject appellant's argument that the manufacturing and processing exceptions of R. C. 5739.01(E)(2) relieve from taxation the purchase by a manufacturer of *all* tangible personal property necessarily utilized in successive steps leading to the ultimate transformation or conversion of materials or things into a different state or form. Essentially the argument of appellant is that the "integrated plant" test, rejected as to manuacturers generally in *Youngstown Building Material & Fuel Co.* and again in *Canton Malleable,* should be applied to the printing business. We reject this argument.

Instead, we conclude that the only tangible personal property purchased for use in the printing business which is excepted from sales tax by virtue of that portion of R. C. 5739.01(E)(2), excepting from such taxation property used or consumed "directly in the production of tangible personal property for sale by manufacturing [or] processing," is that property which is used directly in the transformation or conversion of other tangible personal property into marketable products, and does not include tangible personal property used or consumed prior to such transformation or conversion, even where essential to the operation of an "integrated plant."

Applying this law to the facts herein, we are in agreement with the Board of Tax Appeals which concluded that the purchases in question "are used prior to the manu-

facturing of a product for sale and that the product here being produced for sale is the printed product such as the telephone directory, the set of encyclopedias or other printed case bound books.'' We reject appellant's assertion that its ''product is printing, and not the item which has been printed.'' The acceptance of such rationale, which we reject, would be to construe the totality of printing *service* as being equivalent to the *production* of tangible personal *property* for sale by manufacturing or processing.

As an alternative argument, appellant asserts that the purchases in question should at least be granted exempt status as ''adjuncts'' for the period after the effective date of R. C. 5739.01 (S). (As applied to this case, from December 1, 1967, through December 31, 1967.)

This argument must be rejected upon the basis of the holding of this court in *Canton Malleable, supra.* Moreover, paragraph (S) only exempts those ''adjuncts'' which are used ''*after* * * * transforming or converting has *commenced.*'' Here, the items in question were used prior to the beginning of ''manufacturing'' or ''processing,'' and thus could not qualify as ''adjuncts'' under the provisons of R. C. 5739.01(S), in any event.

For the reasons heretofore stated we conclude that the decision of the Board of Tax Appeals is not unreasonable or unlawful, and it is therefore affirmed.

*Decision affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, CORRIGAN, STERN and BROWN, JJ., concur.