TIME WARNER OPERATIONS, INC., APPELLEE,
*v.* WILKINS, TAX COMMR., APPELLANT.

TIME WARNER ENTERTAINMENT, APPELLEE,
*v.* WILKINS, TAX COMMR., APPELLANT.

[Cite as *Time Warner Operations, Inc. v. Wilkins,*
**111 Ohio St.3d 559, 2006-Ohio-6210.**]

(Nos. 2005–1932 and 2005–1933—Submitted May
23, 2006–Decided December 13, 2006.)

---

PFEIFER, J.

{¶ 1} The issue in these cases is whether Time Warner should have collected sales tax on rental fees it charged customers for converter boxes. For the reasons that follow, we conclude that Time Warner should have collected sales tax for the rental of the converter boxes.

{¶ 2} In these two consolidated cases, Time Warner Operations, Inc. and Time Warner Entertainment (collectively, "Time Warner") challenge the Tax Commissioner's finding that they owed sales tax on the rental fees they collected from their customers for the use of Time Warner's converter boxes for the period July 1, 1992, through December 31, 1996. Time Warner subscribers who purchased standard, premium, or pay-per-view cable service needed a converter box to unscramble the cable signal from Time Warner during the time period at issue. Time Warner charged a rental fee, which was listed separately on each customer's monthly bill, for the use of the converter boxes.

{¶ 3} In 2003, the Tax Commissioner determined that Time Warner should have collected sales tax on the rental fee for the converter boxes. Time Warner appealed to the Board of Tax Appeals ("BTA"), which concluded that the revenues collected by Time Warner from its customers for the converter boxes were exempt from the sales tax because a sale was not within the definition of a taxable "retail sale" if—in the words of former R.C. 5739.01(E)(2)—"the purpose of the consumer is * * * to use or consume the thing transferred * * * directly in the rendition of a public utility service." See, e.g., 1993 Am.Sub.S.B. No. 152, 145 Ohio Laws, Part III, 4290. (Current R.C. 5739.02(B)(42)(a) now uses similar language to directly except these sales from taxation, rather than excluding them from the definition of "retail sale.")

{¶ 4} The Tax Commissioner appeals from that decision.

{¶ 5} In reviewing a BTA decision, this court looks to see whether that decision was "reasonable and lawful." R.C. 5717.04. "[W]e will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," this court will accept them. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483. The taxpayer has the burden of proof "to show the manner and extent of the error in the Tax Commissioner's final determination." *Stds. Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 30.

{¶ 6} A tax is levied on "each retail sale made in this state." R.C. 5739.02. "[I]t is presumed that all sales made in this state are subject" to sales tax. R.C. 5739.02(C) (formerly subsection (B)). The term "sale" applies to transactions "for a price or rental." R.C. 5739.01(B). Former R.C. 5739.01(E)(2), the

provision on which the BTA relied and the equivalent of which is now codified at R.C. 5739.02(B)(42)(a), stated that a sale is not a taxable "retail sale" if "the purpose of the consumer is * * * to use or consume the thing transferred * * * directly in the rendition of a public utility service." The focus of this case is rentals of cable converter boxes by Time Warner, not purchases made by Time Warner. The exemption cited by the BTA applies when the provider of public utility services is the "consumer" of a "thing." Former R.C. 5739.01(E)(2). "Consumer" is defined as "the person * * * to whom the transfer effected or license given by a sale is or is to be made or given." R.C. 5739.01(D)(1). Thus, when Time Warner purchased converter boxes, which were to be used by it to render public utility services, R.C. 5739.01(E)(2) would have excluded that purchase from the definition of "retail sale." But that statutory provision is irrelevant in situations like the one before us, where the utility service provider is the seller of the thing subject to taxation.

{¶ 7} Time and again, the court has applied the utility exemption—currently at R.C. 5739.02(B)(42)(a)—to purchases by utility providers, not to sales made by utility providers to others. See, e.g., *Manfredi Motor Transit Co. v. Limbach* (1988), 35 Ohio St.3d 73, 518 N.E.2d 936 (a utility company sought to "except certain of its purchases from sales and use taxes" under the exception); *Ohio Edison Co. v. Porterfield* (1971), 28 Ohio St.2d 150, 153, 57 O.O.2d 394, 277 N.E.2d 195 ("The basic theme of the consideration in such cases is whether the purchased items were essential or indispensable in keeping the utility in continuous operation for the provision of service to the public"); *Trans World Airlines, Inc. v. Porterfield* (1970), 22 Ohio St.2d 177, 179, 51 O.O.2d 238, 258 N.E.2d 458 (considering whether an airline was "entitled to have its purchases excepted from the Ohio sales tax on the ground that the purchased items are used directly in the rendition of a public utility service").

{¶ 8} Time Warner also argues that it had no obligation to collect sales tax on the rental fee that it charged its customers for converter boxes because cable television service is not a taxable service under R.C. 5739.01(B). The Tax Commissioner does not dispute the nontaxability of cable television service, and there is no suggestion in the record that he has tried to collect tax on cable services. We fail to see how this argument has any effect on the taxable nature of rental fees for converter boxes.

{¶ 9} It is undeniable that Time Warner charged a monthly fee to its customers for the rental of the converter boxes. The question before this court is whether sales tax should have been collected on the monthly rental fee that Time Warner charged. The converter boxes are clearly tangible personal property. Testimony and exhibits from the BTA hearing establish that Time Warner transferred possession of the converter boxes and gave permission for its

customers to use them in return for a monthly fee. These transactions were sales pursuant to R.C. 5739.01(B)(1), which states that "sale" includes "[a]ll transactions by which * * * possession * * * of tangible personal property, is * * * to be transferred, or a license to use * * * tangible personal property is * * * granted." As already discussed above, "it is presumed that all sales in this state are subject" to sales tax. R.C. 5739.02(C). We conclude that the rental by Time Warner of the converter boxes to its customers was a sale.

{¶ 10} R.C. 5739.29 states that "[n]o vendor shall fail to collect the full and exact" sales tax on a taxable retail sale. Time Warner did not collect sales tax on the monthly rental fee that the company charged its customers for cable converter boxes between July 1, 1992, and December 31, 1996. We conclude that the BTA erred when it found that "the revenue from the converter boxes is exempt from sales tax." The exemption cited by the BTA applies to purchases by utility providers as consumers, not to sales by them, and Time Warner has not identified any other relevant exemption. Accordingly, we reverse the BTA's decision granting Time Warner a sales-tax exemption on the monthly rental fee that the company charged its customers for cable converter boxes during the audit period.

Decision reversed.

Moyer, C.J., Gwin, Lundberg Stratton and O'Donnell, JJ., concur.

O'Connor and Lanzinger, JJ., dissent.

W. Scott Gwin, J., of the Fifth Appellate District, sitting for Resnick, J.

---

**O'Connor, J., dissenting.**

{¶ 11} I dissent.

{¶ 12} The converter box was essential for viewing all but basic cable programming. Time Warner, not the consumer, benefited from the use of this device. The box enhanced Time Warner's ability to deliver additional programming to consumers who were willing to pay higher fees for that premium service and to prevent those who did not pay from being able to view the additional channels. Indeed, without the converter box, even a consumer who paid Time Warner for additional programming would not have been able to access it.

{¶ 13} I agree with the Board of Tax Appeals that the converter box was an essential component of the cable service purchased by consumers who chose more than the basic programming package. I would hold that the rental fee charged to consumers for their use of converter boxes should not be subject to a separate

and additional sales tax, and therefore, I would affirm the BTA's ruling in these cases.

LANZINGER, J., concurs in the foregoing dissenting opinion.

---

Kegler, Brown, Hill & Ritter, Melvin D. Weinstein, and Paul D. Ritter Jr., for appellees.

James Petro, Attorney General, and Cheryl D. Pokorny, Deputy Attorney General, for appellant.